LAND, J.
This is a suit for damages for personal injuries.
The petition alleges, in substance, that the petitioner was working in defendant’s sawmill as helper to the edgerman, and was required, among other duties, to keep the roller bed clean of planks and slabs; that on December 10, 1910, a slab got caught in one of the live rollers, and it was the duty of the petitioner to unfasten the slab at once; that the only way to reach the place where it was fastened was to cross over the live roller bed; that petitioner started hurriedly to cross the live roller bed and made a quick spring from his left foot, lighting on his right foot; that his right foot, or the toe of his right foot, was caught by one of the live rollers; and that instantly the live roller, *287 which was running several hundred revolu■tions to the minute, threw your petitioner’s foot over on the'other side of the said roller .and down onto a cut-off saw, which was ■running beneath the live roller bed, and instantly the said saw cut petitioner’s foot off and mangled it so that it was necessary to •amputate his leg about halfway between his ankle and knee.
The petition further alleges that there was no other way to cross the live roller bed, and that the petitioner was not negligent or careless in any way or manner in crossing it.
The petition further alleges that the defendant was negligent in allowing said saw to be running at all at that time and was grossly negligent in leaving it exposed as it was; that an opening of one or two inches would have been amply sufficient for the raising and lowering of said saw, but that •defendant negligently left open a space of some eight inches in live roller bed, and it was through this space that petitioner’s foot was thrown against the saw aforesaid; that, prior to the accident in question, this opening had been made safe, until timbers either rotted loose or were knocked loose; and that, immediately following the injury to the) plaintiff, the opening was closed to within •one Inch.
The petition further alleges that the plaintiff had worked in said mill less than a week; that he was ignorant, could neither read nor write, and knew nothing of ma■chinery or of the dangers^ incident to running the saw; that he had not been warned or instructed as to the danger of being cut by the •saw or thrown onto it; that he did not know that the saw was being run beneath the live roller bed; and that defendant was negligent in not instructing the plaintiff of the •danger, and especially so “since plaintiff was ignorant, inexperienced, and of a low order -of intelligence.”
Plaintiff alleges that he had suffered in the loss of his leg damages to the extent of $7,000 and the further sum of $4,000 for pain and suffering.
The petition was amended by allegations that the defendant was also negligent in not having the place properly lighted so that the live roller and timber therein could be easily seen by the petitioner.
Defendant filed an exception of no cause of action, and, reserving the benefit of the exception, answered by denying generally the allegations of the -petition, and further averred that the plaintiff was amply experienced and familiar with the duties, risks, and dangers of the position in which he was employed ; that he had been sufficiently warned and had repeatedly used the saw on which he was hurt and was familiar, as any of those above him in authority, as to the danger of being injured by letting his foot go through the slit in the roller bed through which it was. necessary for the saw to work, and of the danger of getting upon or crossing the roller bed and stepping on the live rollers thereon; that the danger was a regular and normal risk of his employment.
Defendant further averred that, in crossing the roller bed while the machinery was in motion, the plaintiff acted outside of the scope of his duties; that the plaintiff was negligent in carelessly stepping on the live roller, which as well as the saw was in plain open view; and that plaintiff was in fact injured through his own carelessness and negligence.
The case was tried before the judge below, and judgment was rendered in favor of the plaintiff for the sum of $2,500, with costs of suit. Defendant appealed, and plaintiff in his answer to the appeal has prayed for an increase in the. award of damages.
According to the allegations of the petition, plaintiff sprang on the roller bed, alighting on his right foot, which was caught by one of the live rollers, which threw the foot over *289 the other side of the roller and down onto the cut-off saw.
On the trial of the ease this version of the accident seemed to have been abandoned, and testimony was adduced to prove that the plaintiff landed safely on the roller bed, and then, to avoid a plank which was rapidly approaching him over the roller, turned and jumped on a roller which carried his foot down and upon the rapidly revolving cut-off saw.
The following extracts from plaintiff’s testimony show his version of the accident:
“I started to cross the roller bed to get a little slab from against the bumper board, and the carriage was coming towards me. I started down the roller bed and I had to go back down.
“Q. When Mr. Collier yelled at you to go across there and get that plank, what did you do?
“A. I jumped into the roller bed and started after it.
“Q. When you jumped on the roller bed to go after it, then what happened?
“A. I slipped up with my left foot.
“Q. What did you then do?
“A. I looked back and saw the plank fall from the saw.
“Q. Tell all about it.
“A. I jumped, I jumped right on the roller. My toe struck the roller; just that quick it cut my foot off.
“Q. How came you to jump?
“A. I seed that plank and jumped to try to get over.
“Q. How close did the plank seem to be to your feet when you jumped?
“A. It looked to be right upon me.
“Q. Did you jump to get out of the way of the plank?
“A. Yes, sir.
“Q. Did anybody instruct you to look out for plank coming on that live roller bed?
“A. Yes, sir; Mr. Collier and Sam Smith told me not to let any big plank catch me on there; they would break my leg.”
Plaintiff testified that he knew that the cross saw was there, but did not know whether or not it was running at the time; and further that he had been told to cross the live roller bed, and had been going across all the time and knew no other way to reach the slab which had been caught in the roller near the bumper.
When asked why he did not step across the roller (bed?) instead of stepping down it, plaintiff replied, “I would run into the carriage there,” meaning the log carriage, which was being operated at the time. This carriage had a “shot gun. feed” and supplied two saws which “cut going and coming.” Each plank as cut was thrown on the live rollers and carried in the direction of the slab bumper. (For illustration, we annex a rough sketch furnished by plaintiff’s counsel.) Planks, when too long, were stopped and sawed off by the crosscut saw at figure 5. The planks followed each other on the live rollers at appreciable intervals, during which the roller bed could be crossed with reasonable safety. Plaintiff admits that he had been instructed as to the danger of being struck by passing planks when crossing the roller bed and warned to watch out for them. When plaintiff jumped upon the bed at figure 4, there was nothing to prevent him from seeing a plank coming on the live rollers. He admits that he saw the plank fall from the saw. If so, plaintiff had abundant time to get off the roller bed on either side. ' Planks were continually falling from the saw, and it is absurd to suppose that such an incident caused plaintiff to lose his head and to make a wild jump down the roller bed. On the face of plaintiff’s testimony, he was negligent in not getting off the roller bed or in not stepping to one side of the bed, which was at least four feet wide.
Plaintiff admits in his testimony that on the very day he got hurt he had assisted in operating the crosscut saw.
Sam Smith, witness for the plaintiff, testified that when the latter got on the roller bed “he went running down the roller bed like and to the side, * * *” and that the saw knocked him down before the plank got to him. Sam Smith was tripper to the edger, and plaintiff was his helper. He had told plaintiff to watch out for planks as they might hit his feet, but did not give him any *291 warning about the saw, because plaintiff was there all the time assisting the witness in operating the saw by holding the plank'on the roller bed and by raising the saw so as to cut the plank.
“Q. You thought it would be foolish to tell him the saw is there and he might get into it and it would hurt him if he did?
“A. Yes, sir.”
Sam Smith furth'er testified that the plaintiff had been working this particular saw six days, and had been using it during the forenoon of the day of the accident. Smith and other millmen had frequently crossed the roller bed without accident, and there is no doubt that plaintiff could have safely crossed it, if he had used ordinary prudence. The evidence shows that, instead of getting off the roller bed on either side, plaintiff carelessly, and we may say recklessly, jumped or ran down the bed until his foot struck the first live roller, which dragged it into the saw on the other side.
The saw was situated in close proximity to the live roller, and when in use was beneath the roller bed. The evidence shows that the saw was necessarily revolving when the mill was running.
The charge of negligence against the defendant is that the opening through which the saw was raised and lowered was unnecessarily . large. This fact is established by the evidence, but it does not follow that the defendant was negligent in leaving such an opening under the circumstances of the case, unless the law requires the incasement of all- kinds of machinery, the operation of which may possibly cause injury to negligent employés. We do not consider it necessary to decide this question, as it is obvious, we think, that the negligence of the plaintiff was the moving cause of the accident.
As to the alleged ignorance of the plaintiff, it does not appear from his testimony that he was below the average uneducated country laborer of his race. Sam Smith testified that the plaintiff was “a very green man,” meaning that he had to be shown and watched in matters connected with his work in the mill. Plaintiff performed the duties of his position satisfactorily until he was injured. He certainly had sense enough to get out of the way of a moving plank.
It is therefore ordered that the judgment below be reversed, and that plaintiff’s suit be dismissed, with costs.
BREAUX, C. J.
I agree in the main with the opinion, except as to the opening in the roller table.
It should have been closed, except as to an inch or two, and the opening should not have been six or more inches.
The edgerman, as I understand, ordered the plaintiff to go to the end of the roller table.
He was complying with the edgerman’s order at the time.
I therefore respectfully dissent.